UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SANDRA DANUSSI,

                Creditor-Appellant,

    -v-                                        8:09-CV-198 (DNH)

JESSE P. KASKA,

                Debtor-Appellee.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

GASPAR & SMITH, PLLC              YURI J. GASPAR, ESQ.
Attorneys for Creditor-Appellant
2284 Saranac Avenue
Lake Placid, New York 12946

O'CONNELL & ARONOWITZ, P.C.     WILLIAM A. FAVREAU, ESQ.
Attorneys for Debtor-Appellee         DEAN C. SCHNELLER, ESQ.
206 West Bay Plaza
Plattsburgh, New York 12901

OFFICE OF THE CHAPTER 13 TRUSTEE –   ANDREA E. CELLI, ESQ.
ALBANY OFFICE
7 Southwoods Boulevard, 1st Floor
Albany, New York 12211

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Creditor-appellant Sandra Danussi ("Danussi") appeals from an Order of Hon.

Robert E. Littlefield Jr., Chief United States Bankruptcy Court Judge for the Northern District

of New York, denying her objection to the claimed homestead exemption of debtor-appelle

Jesse P. Kaska ("Kaska"). Both parties filed their briefs, and the appeal was taken on submission without oral argument.

## II. BACKGROUND

Danussi agreed to loan Kaska, her nephew, $100,000.00 in August of 2002 in order to help him build a used car and snowmobile dealership on his property in Ellenburg Center, New York ("Ellenburg Center property"). At that time, the parties executed a promissory note obligating Kaska to repay the loan within eighteen months. Although there is some evidence that they intended to use the Ellenburg property as collateral for the loan, it is undisputed that the parties never executed a valid mortgage agreement.

In March of 2005, Kaska wrote Danussi a letter concerning the status of his loan repayments. In his letter, he stated that he had recently begun building a home on another parcel of land. He explained that he intended to mortgage the other property after he completed construction of his home and use the mortgage funds to repay the loan from her. As a result, she agreed in April of 2005 to execute a new promissory note requiring complete repayment of the loan on or before April 5, 2006.

On May 31, 2005, Danussi sent Kaska a letter asserting the right to review and approve any proposed modifications to the Ellenburg Center property after learning that he had begun building a residential apartment on the premises. In his written reply to her letter, he informed her that he anticipated being able to pay the first half of the principal debt on October 5, 2005 as provided in the most recently executed promissory note. He also stated that he had already begun converting a portion of the Ellenburg Center property into a residence for himself three weeks prior to his receipt of her letter dated May 31, 2005.

Kaska began living in the newly renovated apartment in either late June or early July of 2005. He failed to make his scheduled payment on October 5, 2005. In March of 2006, his license to sell cars expired. He testified that his car and snowmobile business had ceased at that time, and the last business he conducted on the Ellenburg Center property was in June 2006 when he briefly stored junk cars on behalf of the local township. Having failed at his attempt to start his own business, he began working for Tony's Ticonderoga Sports in either October or November of 2006.

On June 19, 2007, Danussi obtained a state court judgment against Kaska for the full amount due on the loan. The filing of her judgment with the appropriate county clerk created a lien on the Ellenburg Center property for the debt owed. On September 26, 2007, Kaska filed his voluntary bankruptcy petition pursuant to Chapter 13 of the United States Bankruptcy Code. In his petition, he declared the Ellenburg Center property to be valued at $92,500.00. However, he also claimed a homestead exemption of $50,000.00 against the same property.

On January 11, 2008, Danussi objected to Kaska's claimed homestead exemption. Following a hearing before Judge Littlefield on September 8, 2008, her objection was denied on January 14, 2009. In particular, the Bankruptcy Court distinguished his homestead exemption from the homestead exemption claimed in In re Hager, 74 B.R. 198 (Bankr. N.D.N.Y. 1987) and determined that his conduct did not demonstrate an intent to hinder, delay, or defraud her in violation of 11 U.S.C. § 522(o). (See Order, Dkt. No. 1-1, 6-7, 9-10.) This timely appeal followed.

- 3 -

### III. STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and conducts a *de novo* review for conclusions of law. FED. R. BANKR. P. 8013; In re Manville Forest Prods. Corp., 209 F.3d 125, 128 (2d Cir. 2000); In re Petition of Bd. of Directors of Hopewell Int'l Ins. Ltd., 275 B.R. 699, 703 (Bankr. S.D.N.Y. 2002).

### IV. DISCUSSION

Danussi bases her appeal on two separate grounds. First, she contends that Kaska is entitled to a homestead exemption for only the portion of the Ellenburg Center property that was converted to a residential apartment unit. Second, she argues that the Bankruptcy Abuse Prevention and Consumer Protection Act, 11 U.S.C. § 522(o), bars his homestead exemption because his actions demonstrate his intent to hinder, delay, or defraud a creditor. These arguments will be addressed *in seriatim*.

#### A. Kaska's Renovation of the Ellenburg Center Property

A state may opt out of the federal exemption scheme for bankruptcy filings and instead craft its own set of exemptions for debtors domiciled in its jurisdiction. 11 U.S.C. § 522(b); see also John T. Mather Mem'l Hosp. of Port Jefferson, Inc. v. Pearl, 723 F.2d 193, 194 (2d Cir. 1983). It is undisputed that New York State created a homestead exemption among the permissible bankruptcy exemptions listed within N.Y. DEBT & CREDIT LAW § 282. Pursuant to New York's homestead exemption,

> [p]roperty of the following types, not exceeding fifty thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof: 1) a lot of land with a dwelling thereon, 2) shares of a stock in a cooperative

apartment corporation, 3) units of a condominium apartment, or 4) a mobile home.

N.Y. C.P.L.R. § 5206(a).

During the hearing before the Bankruptcy Court, Kaska estimated that his residence consisted of 900 square feet out of the 3300 square foot building located on the property. In other words, his residence amounted to 27.7% of the Ellenburg Center property. Based upon this figure, Danussi contends Kaska is only entitled to claim 27.7% of the value of the Ellenburg Center property as a homestead exemption instead of the statutory maximum $50,000.00. The issue presented is therefore whether his prior use of the Ellenburg Center property as a commercial place of business limits his homestead exemption to only the portion of the property renovated as a residence.

Danussi cites Hager as support for her argument that Kaska's homestead exemption should be limited to 27.7% of the value of the Ellenburg Center property. In Hager, the debtor owned a building that was designed to serve as both his home and his place of business. 74 B.R. at 201. Based upon the debtor's mixed use of the property, the Hager court excluded the percentage of the property used for conducting business after calculating the proportion of square feet dedicated for commercial purposes. Id.

However, as the Bankruptcy Court noted, Kaska's use of the Ellenburg Center property is not entirely analogous to the scenario considered in Hager. Significantly, his license to sell cars expired in March of 2006, and he had ceased all business operations on the property more than a year and a half prior to filing his bankruptcy petition. In contrast, the debtor in Hager "used a portion of the premises for business purposes at the time of filing, and continued this use for some six (6) months thereafter." Id. Although Danussi

contends that Hager "does not allow debtors to use homestead exemption for the property that was designed for commercial activities *and* retains its commercial character," (Appellant's Reply Br., Dkt. No. 10, 4 (emphasis added)), the nearly eighteen months prior to his bankruptcy filing during which he stopped using the Ellenburg Center property to conduct business cuts against the argument that the property retained its commercial character. Instead, the Ellenburg Center property deviated from its commercial design well before she obtained her judgment against him on June 19, 2007 and even longer before he filed his bankruptcy petition on September 26, 2007.   Therefore, the Hager decision is distinguishable and the Bankruptcy Court's prior decision not to limit his homestead exemption to 27.7% of the value of the Ellenburg Center property will be affirmed.

### B.  **Intent to Hinder, Delay, or Defraud Pursuant to 11 U.S.C. § 522(o)**

Under the Bankruptcy Abuse Prevention and Consumer Protection Act,

> the value of an interest in . . . real or personal property that the debtor or a dependent of the debtor claims as a homestead[ ] shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt . . . if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o)(4).  The parties agree as to the four elements an objecting party must prove by a preponderance of the evidence in order to successfully bar a debtor's homestead exemption under § 522(o):

> (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing; (2) the property that the debtor disposed of was nonexempt; (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.

In re Presto, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007) (citing In re Sissom, 366 B.R. 677, 688 (Bankr. S.D. Tex. 2007)); see also FED. R. BANKR. P. 4003(c).

As a preliminary matter, there is a substantial question as to whether Danussi satisfied her burden as to the first element under § 522(o), i.e., whether she proved that Kaska "disposed" of any part of the Ellenburg Center property within the ten years preceding his bankruptcy petition by converting part of the property into a residential apartment unit. It is not alleged that he ever sold, conveyed, or transferred the Ellenburg Center property to another party prior to his bankruptcy filing.[1] Although Kaska raised this issue, Danussi never addressed in her reply whether the renovations constituted a disposal for purposes of § 522(o)(4). (See Appellant's Reply Br., Dkt. No. 10.) However, even assuming she satisfied the first three elements under § 522(o)(4), there is no basis to overturn the prior decision with respect to the fourth element.

Danussi asserts that several badges of fraud committed by Kaska demonstrate by inference his intent to hinder, delay, or defraud her while she sought to enforce his obligation pursuant to the promissory note. "Because direct evidence of fraudulent intent is rarely available, [courts] have used the inferential 'badges of fraud' approach to determine whether a debtor acted with 'intent to hinder, delay, or defraud,' a creditor regardless of whether the intent language came from a state fraudulent transfer statute or applicable bankruptcy law." In re Addison, 540 F.3d 805, 811 (8th Cir. 2008) (collecting cases). Danussi alleges five badges of fraud: (1) that Kaska transferred a portion of the Ellenburg Center property from a

---

[1] As Kaska explains, "transfer" is defined as "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (I) property; or (ii) an interest in property." 11 U.S.C. § 101(54).

commercial building to a residential unit without her consent or approval; (2) that he falsely stated he was building a home on a separate property in an effort to persuade Danussi to agree to an extension for repayment of the loan; (3) that he retained control of the Ellenburg Center property after renovation of the apartment unit was complete; (4) that the renovation was made after he defaulted on the loan and at or about the same time he was sued; and (5) that he was insolvent at the time of the renovation.  Viewed together, she argues these five alleged acts of misconduct demonstrate Kaska's intent to insulate himself from being held fully liable for the debt on the loan.

Despite the alleged badges of fraud, Danussi overlooks several of the Bankruptcy Court's conclusions of fact in support of its decision to overrule her objection to Kaska's homestead exemption.  In particular, after considering the testimony and exhibits of the parties, the Bankruptcy Court found "Kaska to have been a genuinely sincere, albeit naÏve, budding entrepreneur."  (Order, Dkt. No. 1-1, 9.)  While the Bankruptcy Court acknowledged that he may have exaggerated his progress towards obtaining a mortgage on a separate property, it expressly rejected the suggestion that he had the intent, let alone the capability, to implement a multi-year scheme to mitigate his loan obligation.  Id.  Additionally, the Bankruptcy Court concluded that he did not intend to file for bankruptcy at the time he began to renovate the Ellenburg Center property.  Id. at 10.  Instead, it determined that his decision to convert a portion of the property into an apartment unit was "more to be a move of good financial sense (one of few in this case), rather than a step in a methodically planned descent into bankruptcy."  Id.

Having had the opportunity to observe the parties testify, the Bankruptcy Court acted well within its discretion to determine the credibility of the parties.  It is also undisputed

that Kaska continued to operate his business at the time he began renovating the Ellenburg Center property in May of 2005, thereby creating an inference that he still hoped to avoid bankruptcy even though he planned on using the property as his primary residence. His license to sell cars did not expire until March of 2006 at which point he, for the most part, had stopped conducting business on the property. Finally, as the Bankruptcy Court indicated, Danussi's allegation that he did not undertake the renovation until "at or about the time he was sued" for default on his loan obligation is completely incredulous because he began living on the Ellenburg Center property no later than July 2005, whereas she sued him for default in April of 2007. For all of these reasons, there is no basis to determine that the Bankruptcy Court's factual conclusions were clearly erroneous.

Therefore, Danussi has not come forward with sufficient proof to establish by a preponderance of the evidence that Kaska intended to hinder, delay, or defraud her as provided in § 522(o)(4), and the Bankruptcy Court's decision will be affirmed.

## V. **CONCLUSION**

Under New York law, Kaska is entitled to a homestead exemption of $50,000 for the Ellenburg Center property. His use of the property is distinguishable from the property under consideration in Hager because of the relatively large amount of time prior to his bankruptcy filing during which all commercial activity on the property had ceased. Additionally, Danussi cannot satisfy the fourth element of her objection to Kaska's homestead exemption under § 522(o)(4). The factual determinations made by the Bankruptcy Court are not clearly erroneous, and there is a lack of evidence indicating he fraudulently converted his otherwise non-exempt property into exempt property. Rather, the

Bankruptcy Court properly concluded that it is much more likely he simply needed a new home in light of his financial troubles.

Therefore, it is

ORDERED that

The January 14, 2009 Order of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

United States District Judge

Dated: February 26, 2010
       Utica, New York